Daniel Kotchen (admitted *pro hac vice*)
Michael von Klemperer (admitted *pro hac vice*)
**Kotchen & Low LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 468-4014
Fax: 202-280-1128
Email:  dkotchen@kotchen.com
            mvonklemperer@kotchen.com

Gregory P. Olson, Esq. No. 177,942
**Law Office of Gregory P. Olson**
501 West Broadway , Suite 1370
San Diego, CA 92101
Telephone:   (619)564-3650
Facsimile:    (619)233-1969
Email:          greg@olsonesq.com

Attorneys for IMAGENETIX, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGENETIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBINSON PHARMA, INC., et. al., <br><br> Defendants. | Case No. SACV15-599 JLS (RNBx) <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL AND FOR SANCTIONS** <br><br> **FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED MARCH 23, 2016** <br><br> Fact Discovery Cut-Off: 7/26/16 <br> Pre-Trial Conference Date: 12/2/16 <br> Trial Date: 1/10/17 <br><br> Hearing Date: 4/28/2016 <br> Hearing Time: 10:00 a.m. <br><br> REDACTED |

## NOTICE OF PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

Please take notice that on April 28, 2016, at 10:00 a.m., in Courtroom 6A of the above-titled court, located at 411 West Fourth Street, Santa Ana, California, 92701, Plaintiff Imagenetix, Inc. ("Plaintiff") will and hereby does move to compel production of documents, answers to interrogatories, and for sanctions as to each Defendant. To date, Defendants Robinson Pharma, Inc., Doctor's Clinical, Inc., d/b/a U.S. Doctor's Clinical, Gero Vita, Inc., Nutrivita Laboratories, Inc., Vitastrong, Inc., d/b/a Gardavita (collectively "Defendants") have fallen woefully short of their discovery obligations under the Federal Rules, and have failed to produce accurate and complete transactional data for the Accused Products, have failed to conduct a good faith search for, and production of, other documents responsive to Plaintiff's document requests, have failed to provide full and truthful responses to Plaintiff's interrogatories, have failed to take necessary steps to preserve data and documents, and failed to adequately prepare their designated witness for a Rule 30(b)(6) deposition necessitated by their discovery misconduct. Accordingly, and as addressed in more detail in the accompanying joint stipulation, Plaintiff respectfully requests that the Court order Defendants to produce accurate and complete transactional data for the Accused Products, conduct a full and adequate search and production of all other documents responsive to Plaintiff's document requests, supplement their

interrogatory responses, take necessary steps to preserve data and documents, and compensate Plaintiff for the attorney time and costs of taking the Rule 30(b)(6) deposition, and the attorney time and cost of preparing and filing this motion.

Fact discovery is currently scheduled to conclude July 26, 2016. Order (June 17, 2015) (Dkt. #30) (Ex. 1).

1

# <u>TABLE OF CONTENTS</u>

2

3  NOTICE OF PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS .......ii

4  TABLE OF CONTENTS.............................................................................................1

5  JOINT STIPULATION OF THE PARTIES RELATED TO PLAINTIFF'S MOTION
   TO COMPEL AND FOR SANCTIONS ...................................................................2

6  PLAINTIFF'S CONTENTIONS AND POINTS AND AUTHORITIES....................2

7    I.       PLAINTIFF'S INTRODUCTORY STATEMENT ....................................2

8    II.      ARGUMENT ................................................................................................5

9      A.     Defendants' Production Of Documents Related to the Accused Products
              Has Been Grossly Inadequate ...................................................................5

10     B.     Defendants' Search And Collection Efforts Were Woefully Inadequate,
              And Defendants Should Be Compelled To Re-Search For and Produce
11            Responsive Documents................................................................................9

12     C.     Defendants' Interrogatory Responses Are Evasive And Incomplete.........16

       D.     Defendants' Preservation Efforts Have Been Woefully Inadequate..........24
13
       E.     Defendants' Representative Was Woefully Unprepared For Her Deposition,
14            Warranting Sanctions................................................................................27

     III.     CONCLUSION..........................................................................................33
15
   DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES...............34
16
     I.       DEFENDANTS' INTRODUCTORY STATEMENT...............................34
17
     II.      DISCOVERY RESPONSES CITED BY PLAINTIFF.............................37

     III.     DEFENDANTS' CONCLUSION...............................................................48
18

19

20

21

22

23

24

25

26

27

28

## JOINT STIPULATION OF THE PARTIES RELATED TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

### PLAINTIFF'S CONTENTIONS AND POINTS AND AUTHORITIES

## I.  PLAINTIFF'S INTRODUCTORY STATEMENT

Imagenetix served each Defendant with a set of document requests (10 requests to each Defendant) and a set of interrogatories (3 interrogatories to Robinson Pharma, 2 interrogatories to all other Defendants) on May 19, 2015, and subsequent sets of document requests (1 request to each Defendant) and interrogatories (2 interrogatories to each Defendant) on May 21, 2015.[1] Defendants responded to all discovery requests on July 6, 2015 and provided a verification for each interrogatory response on August 7, 2015.[2] On July 24, 2015, Defendants produced a total of 196 pages of documents in response to Imagenetix's requests for production, which did not include, for example, a single email. Defendants also produced sales information for the Accused Products that indicated under ███████ units in sales, though

---

[1]  Pl. Imagenetix's First Req. for Produc. of Docs. to Each Def. (Exs. 2-6); Pl. Imagenetix's First Set of Interrogs. to Each Def. (Exs. 7-11); Pl. Imagenetix's Second Req. for Produc. of Docs. to Each Def. (Exs. 12-16); Pl. Imagenetix's Second Set of Interrogs. to Each Def. (Exs. 17-21). Except as otherwise noted, Plaintiff's discovery requests to each Defendant, and each Defendant's responses are identical. Accordingly, except as otherwise noted, Plaintiff cites its requests and Defendants' responses collectively throughout this brief.

[2]  Each Def.'s Resp. to Pl.'s Req. for Produc. of Docs., Set One (Exs. 22-26); Each Def.'s Resp. to Pl.'s Interrogs., Set One (Exs. 27-31); Each Def.'s Resp. to Pl.'s Req. for Produc. of Docs., Set Two (Exs. 32-36); Each Def.'s Resp. to Pl.'s Interrogs., Set Two (Exs. 37-41); Verification (Ex. 42).

Defendants' marketing frequently touts "8 Million Bottles Sold." *See, e.g.*, Robinson000032-Robinson000033 (Ex. 43); Robinson000034-Robinson000035 (Ex. 44). Concerned that Defendants' production was incomplete and inaccurate, Imagenetix's counsel raised their concerns with Defendants' counsel over a series of emails and phone calls in July through September. *See, e.g.*, Email from M. von Klemperer to A. Cartee (July 20, 2015) (Ex. 45); Email from M. von Klemperer to A. Cartee (Aug. 3, 2015) (Ex. 46). Defendants' counsel confirmed that the Defendants' production was complete, and that Defendants would not be producing more documents.

Plaintiff then noticed a Rule 30(b)(6) deposition to address the types and location of documents responsive to Plaintiff's document request, Defendants' search and collection efforts, Defendants' preservation efforts, and the veracity of the sales data Defendants provided. Am. Notice of Rule 30(b)(6) Deposition at 2-3 (Ex. 47). That deposition took place on September 30, 2015, and Defendants designated Robinson Pharma's Chief Financial Officer, Elaine Phan, to represent each entity in response to the notice. Phan Depo. Tr. 11:1-5 Sept. 30, 2015 (Ex. 48). As discussed in greater detail below, the deposition revealed numerous points of concern, including the inadequacy of Defendants' document search and collection efforts, the inadequacy of Defendants' document preservation efforts, and the inaccuracy of

Defendants' verified interrogatory responses. Additionally, Defendants' designated witness was unprepared and unable to address the vast majority of questions at the deposition, even those specifically identified in the deposition notice.

Following the deposition, Imagenetix's counsel wrote to Defendants' counsel expressing great concern that Defendants' search and collection efforts had been inadequate, that its preservation efforts had been inadequate, and that these inadequacies should have been plainly evident to Defendants' counsel at the time they certified Defendants' discovery responses. Letter from D. Kotchen to D. Do-Khanh and A. Cartee (Oct. 6, 2015) (Ex. 49). Imagenetix's counsel requested that Defendants update and/or supplement their discovery responses, search for, collect, and produce responsive documents pursuant to accepted discovery methodology, provide accurate sales data for the accused products, and compensate Plaintiff for the time and costs of preparing for and taking the deposition. *Id.* at 2. Defendants refused to comply with any of these requests, other than to provide additional sales data.[3] Email from A. Cartee to M. von Klemperer (Oct. 9, 2015) (Ex. 50). Despite several subsequent emails and telephone calls, Defendants have refused Imagenetix's requests that they comply with their basic discovery obligations.

---

[3] However, as discussed in greater detail below, this sales data was inconsistent with Defendants' initially produced sales data, and incomplete.

# II. ARGUMENT

## A. Defendants' Production Of Documents Related to the Accused Products Has Been Grossly Inadequate.

Rule 34 permits a party to serve a request for the production of documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). Rule 26(b) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Where a party's production is incomplete, Rule 37(a) permits the Court to compel further production. Fed. R. Civ. P. 37(a)(3)(iv), (4).

Imagenetix issued the following document request to each Defendant:

i.   *Request for Production No. 1, First Set of Document Requests*

All documents relating to the Accused Products, including but not limited to marketing, promotional, technical, manufacturing, and scientific materials; presentations; forecasts; budgets; financial documents; agreements; communications with the other defendants in the above captioned case, actual or potential distributors, suppliers, manufacturers, retailers, or consumers; board of directors presentations; brochures; fliers; newsletters; websites; and product labeling.

(Exs. 2-6 at 6-7).

Defendants each responded that they "will comply and provide responsive documents in [their] possession and control," (Exs. 22-26 at 2), but have produced almost no responsive documents. For example, Defendants have failed to produce a single technical, manufacturing or scientific document. Likewise, they have failed to

produce any presentations, forecasts, budgets, agreements, communications with the other Defendants, distributors, suppliers, manufacturers, or retailers, brochures, fliers, or websites. The only responsive materials Defendants have produced are: inaccurate and incomplete sales data, product labels, copies of the two publicly available studies cited in Imagenetix's complaint, a handful of magazine advertisements, and eight letters to potential customers with names and contact information redacted.

There is no plausible argument that this production is complete. Moreover, Defendants' production of sales data was inadequate for several reasons. First, Defendants' data is demonstrably inaccurate. Thus far, Defendants have provided two conflicting sets of sales data. After Imagenetix questioned the accuracy of the first set of sales data Defendants provided, Defendants sent Imagenetix a second production of sales data that revealed approximately $█████ in additional sales. *See* Declaration of L. Tremaine ¶ 3 (Ex. 51). Moreover, a comparison between Defendants' originally produced data and new data revealed discrepancies throughout. For example, according to the originally produced data, Defendant VitaStrong sold $█████ of Arthro-7 in 2011. Robinson000003 (Ex. 52). However, according to Defendants' new data, Defendant VitaStrong only sold $█████ that year. Declaration of L. Tremaine ¶ 4 (Ex. 51).

Defendants' data is also inconsistent with data subpoenaed from third-party retailers. For example, the original data Doctor's Clinical provided indicated only $███ in sales of the Arthro-7 product in 2014, while the new data indicated $███ in sales in 2014. Robinson000005 (Ex. 53); Declaration of L. Tremaine ¶ 5 (Ex. 51). Data provided by Walgreens indicated that Walgreens alone purchased $███ worth of Arthro-7 from Doctor's Clinical in 2014. WAG000006 (Ex. 54).

Additionally, Defendants' data only accounts for sales of the Arthro-8 product by Defendant VitaStrong. Yet Defendant Doctor's Clinical offers Arthro-8 for sale on its website and Defendants produced artwork for a "Doctor's Clinical" brand Arthro-8. IMAG-00001962-IMAG-00001963 (Ex. 55); Robinson000037-Robinson000039 (Ex. 56). Incredibly, Defendants' 30(b)(6) designee testified that Doctor's Clinical has never sold Arthro-8. Phan Depo. Tr. 158:12-13 (Ex. 48).

Second, Defendants have only produced data from 2009 forward, asserting that earlier data is irrelevant. This is not the case. Defendants' marketing materials indicate that they have sold "8 Million Bottles" of Arthro-7, and this figure increased from "7 Million Bottles" sold in or around 2012. (Exs. 43, 44); Robinson000048 (Ex. 57). Yet Defendants' produced data accounts for only approximately ███ bottles sold. Defendants' designee testified that, while the 8 million bottles sold figure was accurate, the remaining ███ bottles were sold before 2009. Phan Depo. Tr.

7

167:12-18 (Ex. 48). Defendants maintain this prior sales data. *Id.* 167:23-168:5. Imagenetix should be afforded an opportunity to test this assertion which is unsupported by Defendants' own marketing materials.

Imagenetix finds the discrepancies and incompleteness of Defendants' production extremely troubling, and indicative of the bad faith approach Defendants have taken to discovery thus far. Accordingly, Imagenetix respectfully requests that the Court order each Defendant to produce:

> a. all transactional data related to the Accused Products as kept in the ordinary course of business, without limit by date, including the quantity of the Accused Products sold, the revenue and margin of the Accused Products sold, the name and contact information for the entity or individual who purchased the Accused Products;
>
> b. all marketing and promotional materials related to the Accused Products, including advertisements, trade fair materials, website materials, presentations, video and audio commercials, brochures, fliers, newsletters, product labeling, magazines, *etc.*;
>
> c. all manufacturing and scientific materials related to the Accused Products, including formulations;

d. all agreements and contracts regarding the Accused Products with retailers, manufacturers, the other Defendants, *etc*.

## B. Defendants' Search And Collection Efforts Were Woefully Inadequate, And Defendants Should Be Compelled To Re-Search For and Produce Responsive Documents.

In addition to providing an inaccurate and incomplete production of documents in response to Imagenetix's first document request, Defendants' search and collection efforts for each document request have been woefully inadequate. Parties must diligently search for, collect, and produce responsive materials – they cannot be "permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12cv2884-BAS, 2015 WL 4714908, at *13-14 (S.D. Cal. Aug. 7, 2015) (quoting *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 463 (S.D. Ohio 1995)); *A. Farber and Partners, Inc.*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party responding to a Rule 34 production request … is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control") (citation omitted) (modification in original). Where a party's production is incomplete, Rule 37(a) permits the Court to compel further production. Fed. R. Civ. P. 37(a)(3)(iv), (4). When the Court grants

a motion to compel, the Court must award the moving party reasonable expenses, including costs and attorneys' fees. Fed. R. Civ. P. 37(a)(5).

Additionally, Rule 26(g) "requires that counsel make a reasonable investigation and effort to certify that the client has provided all information and documents available to it which are responsive to a discovery request" *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, No. CV 05-1516-RSWL SHX, 2007 WL 2758571, at \*13-14 (C.D. Cal. Sept. 18, 2007). Where counsel fails to make a reasonable investigation and improperly certifies discovery responses, sanctions, including reasonable costs and attorneys' fees, are appropriate. Fed. R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification … the court … must impose an appropriate sanction" including "reasonable expenses").[4]

On May 19, 2015, Imagenetix propounded 10 identical document requests to each Defendant. (Exs. 2-6). Defendants Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong provided identical responses.[5] (Exs. 22-26). Each Defendant generally

---

[4] *See also Legault v. Zambarano,* 105 F.3d 24, 28 (1st Cir. 1997) (sanctioning party for failure to produce responsive documents "that a reasonable search would have located," and explaining that Rule 26(g) requires that certifying attorney make "a reasonable effort to assure that the client has provided all information and documents available to him that are responsive to the discovery demand").

[5] Defendant Robinson Pharma's responses were also largely identical except for its response to Requests 4, 7 and 9 (Ex. 22 at 3, 4-5).

agreed to produce responsive documents.[6] On May 21, 2015, Imagenetix propounded an additional document request for "All documents relating to DRM Resources and/or Alpha Health Research." (Exs. 12-16 at 6). Each Defendant stated that it "cannot comply with such request as it does not have any responsive documents in its possession and control." (Exs. 32-36 at 2).

Little question exists that Defendants' document collection efforts have been woefully inadequate, and Defendants' counsel have improperly certified that their production is complete. First, DRM acts as the operating and management company for Defendants Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong, Phan Depo. Tr. 24:16-23, 28:1-18 (Ex. 48), making Defendants' response that they "do[] not have any responsive documents" related to this entity, (Exs. 32-36 at 2), patently false and evidence of bad faith.

Second, Defendants tasked their agents and employees with self-collecting documents, apparently without guidance from counsel. Defendants' 30(b)(6) designee, Ms. Phan, testified that DRM employees searched for and collected documents on behalf of Defendants Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong. Phan Depo. Tr. 92:1-23, 99:13-18 (Ex. 48). However, she did not speak

6 In response to several requests, Defendants stated that they lacked responsive documents. *See* (Exs. 22-26 at 3-5).

with anyone at DRM in preparation for her deposition, and was not aware who at DRM collected documents. *Id.* 92:16-17, 99:5-7, 13-21. To collect documents, DRM was simply provided with Imagenetix's document requests and told to find responsive documents. *Id.* 92:22-93-4. No instructions beyond the requests were provided, and DRM never asked for any clarification. *Id*. 93:5-13.

Tom Nguyen, each Defendant's CEO, searched his own files on behalf of Doctor's Clinical and Nutrivita. Ms. Phan was unaware what methodology Mr. Nguyen used to find responsive documents. *Id.* 101:18-20. Gero Vita employees searched for responsive documents on behalf of Gero Vita. *Id.* 100:14-18. Ms. Phan did not speak with any of these Gero Vita employees in preparation for her deposition, and was unaware what methodology these employees used to find responsive documents. *Id.* 101:2-9.

Ms. Phan was responsible for collecting documents on behalf of Robinson Pharma. *Id.* 102:21-23. Ms. Phan also tasked a colleague, Tracy Pham, and another employee whose name and department she did not remember with collecting responsive documents. *Id.* 102:24-103:17. Ms. Phan received Imagenetix's document requests, and, after reviewing them, personally determined to search her email using two, and only two, keywords: "Arthro-7" and "Imagenetix." *Id.* 104:6-9, 104:12-105:1 ("Q: So you had received the Document Request … and then from that you

personally just determined how to conduct the search? A: Correct"). Ms. Phan and Tracy Pham searched only their own email accounts for documents. *Id.* 105:16-19. Ms. Phan also had the IT department search a server using the two keywords she devised. *Id.* 105:20-106:7. She has no recollection of how many documents she found, how many documents Ms. Pham found, or how many documents the IT department found. *Id.* 106:22-24, 107:2-3, 10-12.

Ms. Phan also searched for physical documents related to Arthro-7 in a filing cabinet. *Id.* 125:10-13, 126:20-23. However, she could not remember what kinds of documents were in the cabinet, how many documents were in the cabinet, how the documents were organized within the cabinet, whether the cabinet contained a folder labeled "Arthro-7" or "Arthro-8," where the cabinet was located in the office, or whether Ms. Pham helped her search the cabinet. *Id.* 125:14-15, 22-25, 126:10-12, 127:18-20, 128:8-20. Ms. Phan also testified that while searching for responsive documents, she had found a licensing letter concerning the '676 Patent that Plaintiff had sent to Robinson Pharma. *Id.* 129:6-13. She did not remember what she did with the document, and Defendants never produced it. *Id.* 129:14-16, 20-21, 130:20-21.

These collection practices were "grossly negligent" – without appropriate supervision, custodians cannot be expected to self-collect documents. *See Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *8 (N.D. Ill. May

25, 2010) (finding party "grossly negligent" where it asked only three employees "to select the documents they felt were relevant"); *see also Nat. Day Laborer Org. Network v. U.S.I.C.E.A.*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) ("custodians cannot be trusted to run effective searches"). Moreover, Defendant Robinson Pharma searched the files of only a miniscule number of custodians, without any input from Imagenetix's counsel, and Ms. Phan herself determined what keywords to use. And those keywords – "Arthro-7" and "Imagenetix" – would not have even returned documents responsive to the vast majority of Imagenetix's document requests. *See, e.g.*, Imagenetix's First Req. for Produc. of Docs. to Each Def. at Request 1 (requesting "All documents relating to the Accused Products" which includes "Arthro-8"); at Request 2 (requesting "documents relating to osteoarthritis"); at Request 3 (requesting "documents relating to cetyl myristoleate"); at Request 6 (requesting "documents relating to United States Patent No. 5,596,676) (Exs. 2-6 at 6-7).

The result of these plainly inadequate searches was a production of only 196 pages that, for example, failed to include a single email.[7] Despite the obvious deficiencies in Defendants' search and collection efforts, Defendants' counsel has

---

[7] Defendants later produced additional sales data for the Accused Products after the 30(b)(6) deposition, admitting that the data they initially provided was inaccurate.

refused to re-search Defendants' files using defensible search methodology. Email from A. Cartee to M. von Klemperer (Oct. 9, 2015) (Ex. 50).

Accordingly, Imagenetix respectfully requests that the Court order Defendants to conduct a "reasonable inquiry … and make a supplemental production of documents." *See A. Farber and Partners, Inc.*, 234 F.R.D. at 189 ("In light of the nature of plaintiff's claims, and the paltry number of documents defendant Garber has produced to plaintiff, it is clear that defendant Garber has not conducted a reasonable inquiry into the factual basis of his responses to plaintiff's requests and has not produced to plaintiff all documents in his 'possession, custody or control.'"). This should be done for each document request. Additionally, Defendants should be ordered to provide Plaintiff with detailed information about all computer systems, networks, data retention policies, and potential sources of electronic information, including but not limited to, email systems, storage systems, backup and archival systems, website information, event data records, communication systems, ESI erasure, modification, and recovery mechanisms, policies regarding records management, the identity of custodians of ESI, and the identity of vendors or subcontractors who store ESI (e.g., DRM). To ensure that Defendants comply with their discovery obligations, they should be required "to provide [Imagenetix] with declarations or affidavits detailing the nature of [their] 'reasonable inquiry' to locate

responsive documents, and such declaration[s] [should] address the inquiry [they] made on a request-by-request basis." *Id.* Finally, Imagenetix has been required to expend considerable resources attempting to secure Defendants' compliance with even their most basic discovery obligations – Defendants should be required to compensate Imagenetix for the attorneys' fees and costs associated with bringing this motion. *See* Fed. R. Civ. P. 37(a)(5) ("the court must … require the party or deponent whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees").

## C. Defendants' Interrogatory Responses Are Evasive And Incomplete.

Rule 33 permits a party to propound written interrogatories. Fed. R. Civ. P. 33(a). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." *Id.* at (a)(2). Rule 26(b) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Zuniga v. W. Apartments*, No. CV 13-4637, 2014 WL 2599919, at \*1 (C.D. Cal. Mar. 25, 2014) (citing Fed. R. Civ. P. 26(b)(1)). "'Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.'" *Id.* (quoting Fed. R. Civ. P. 33(b)(3)). Where a party objects, "[g]eneral

or boilerplate objections are improper – especially when a party fails to submit any evidentiary declarations supporting such objections." *Id.* (citing *A. Farber and Partners, Inc.* 234 F.R.D. at 188). Where a party provides evasive or incomplete answers to interrogatories, the court may compel supplemental answers. Fed. R. Civ. P. 37(a)(3)-(4). When the Court grants a motion to compel, the Court must award the moving party reasonable expenses, including costs and attorneys' fees. Fed. R. Civ. P. 37(a)(5).

       i.    *Interrogatory No. 1, First Set of Interrogatories*

> Provide the annual units manufactured, revenues, and costs for each of the Accused Products.

Plaintiff propounded this interrogatory to each Defendant. (Exs. 7-11 at 4). Defendants Robinson Pharma, Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong's provided the following boilerplate objection and response:

> Responding Party objects to this interrogatory in that it is overbroad as to time and scope. Subject to and without waiving such objection, Responding Party responds that it will provide documents sufficient to show the annual units sold, revenues, and costs for each of the Accused Products for the last six years.

(Exs. 27-31 at 2).

This data is of central importance to the case, and is relevant to, *inter alia*, damages calculations. As discussed in Part II(A) above, the sales data is inconsistent and inaccurate. Additionally, Defendants have not even facially answered this

17

interrogatory in full. Defendants have not produced any data concerning the annual units manufactured. Nor have Defendants produced data concerning Defendant Robinson Pharma's revenues or sale of the Accused Products. Nor have Defendants produced data concerning the costs of each of the Accused Products for Defendants Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong.

Defendants should be ordered to produce this data as maintained in the regular course of business (*i.e.*, unmodified) by Defendants, and should be required to provide a supplemental verification of its accuracy. *See* Fed. R. Civ. P. 33(b)(5). Defendants' production should not be limited to the last six years, as Defendants have asserted, without evidence, that the vast majority of the sales of the Accused Products occurred more than six years ago, and Plaintiff is entitled to test the truthfulness of this assertion.

ii.      *Interrogatory No. 2, First Set of Interrogatories to Each Defendant*

Identify the persons or organizations that purchased the Accused Products and, with respect to each Accused Product, provide the annual amount in units and dollars for each person or organization; for 2015, provide year-to-date.

Plaintiff propounded this interrogatory to each Defendant. (Exs. 7-11 at 4). Defendants Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong's provided the following boilerplate objections and response:

18

> Responding Party objects to this interrogatory as being vague, ambiguous, and overbroad as to time and scope. Responding Party further objects to this interrogatory in that it seeks information not relevant to the subject matter of this litigation, specifically the names of Responding Party's customers, and could require the disclosure of a protected trade secret or other confidential information of Responding Party, which it does not feel necessary to divulge to a competitor. Further, if Responding Party has sold to any individual consumer, disclosure would violate the privacy rights of such third parties. The information sought in this interrogatory, namely, the annual amount of Arthro-7 and Arthro-8 sold in units and dollars would be provided by the documents produced in response to interrogatory number 1.

(Exs. 28-31 at 2).   Defendant Robinson Pharma provided the same boilerplate objections and answered as follows:

> Subject to and without waiving such objections, and to the extent that Responding Party understands this interrogatory, Responding Party responds that it will provide documents sufficient to show that it manufactured the product for the other entities to this action, namely, Doctor's Clinical, Inc.; Nutrivita Laboratories, Inc.; Gero Vita, Inc.; and Vitastrong, Inc.

(Ex. 27 at 2).

Defendants' responses are inadequate. First, there is nothing vague, ambiguous, or overbroad about this interrogatory. Nor are trade secrets or privacy rights implicated, as Defendants' responses may be designated confidential pursuant to the Stipulated Protective Order. *See* Stipulated Protective Order (Dkt. ##37-1, 38). The Court should reject these "boilerplate" objections. *Zuniga*, 2014 WL 2599919, at *1. Second, this interrogatory seeks relevant information. The requested information

is relevant to, for example, damages, and the identification of infringers. *See, e.g.*, *Audatex North America Inc. v. Mitchell Int'l Inc.,* No. 13cv1523-BEN, 2014 WL 4961437, at *7-9 (S.D. Cal. Oct. 3, 2014) (finding sales and financial documents related to the accused product "relevant to the issue of damages and is reasonably calculated to lead to the discovery of admissible evidence") (citing Fed. R. Civ. P. 26(b)(1)). Third, despite its agreement to produce documents sufficient to show that it manufactured the Accused Products for the other Defendants, Defendant Robinson Pharma has in fact failed to produce such documents. Moreover, such a production, even if made, is inadequate, as it would fail to identify other infringers, and would deny Imagenetix data relevant to damages. Imagenetix respectfully requests that the Court order Defendants to answer this interrogatory fully.

  *iii.*  *Interrogatory No. 3, First Set Interrogatories to Defendant Robinson Pharma*

> Identify the persons or organizations that received the Accused Products and, with respect to each Accused Product, provide the annual amount in units and dollars that each person or organization received; for 2015, provide year-to date.

  Plaintiff propounded this interrogatory to Defendant Robinson Pharma (Ex. 7 at 5). Defendant Robinson Pharma provided the following boilerplate objections and response:

> Responding Party objects to this interrogatory as being vague, ambiguous, and overbroad as to time and scope. Responding Party

further objects to this interrogatory in that it seeks information not relevant to the subject matter of this litigation, and the information sought in this interrogatory, namely, the annual amount of Arthro-7 and Arthro-8 sold in units and dollars would be provided by the documents produced in response to interrogatory number 1. Subject to and without waiving such objections, and to the extent that Responding Party understands this interrogatory, Responding Party responds that it will provide documents sufficient to show that it manufactured the product for the other entities to this action, namely, Doctor's Clinical, Inc.; Nutrivita Laboratories, Inc.; Gero Vita, Inc.; and Vitastrong, Inc.

(Ex. 27 at 3).

Robinson Pharma responded that it would provide documents sufficient to show that it manufactured the Accused Products for the other Defendants. However, it has not done this, and has not identified any other person or organization that received the Accused Products. Imagenetix respectfully requests that the Court order Defendant Robinson Pharma to answer this interrogatory fully.

*iv.*    *Interrogatory No. 1, Second Set of Interrogatories to Each Defendant*

Separated by year and entity, identify all current and former directors, officers (including title), and owners (including their share of ownership) for each of the following entities: all defendants in the above-captioned case, Anthro-7, Inc., DRM Resources, and Alpha Health Research.

Plaintiff propounded this interrogatory to each Defendant. (Exs. 17-21 at 4).

Defendants each provided the following boilerplate objections and response:

Responding Party objects to this interrogatory as being overly broad, compound, and vague and ambiguous. Responding Party further

21

objects to this interrogatory in that such information is irrelevant to the subject matter of this lawsuit, namely patent infringement, and is further not calculated to lead to the discovery of admissible evidence. Subject to and without waiving such objections, and to the extent that Responding Party understands this interrogatory, Responding Party responds that Tom Nguyen is 100% owner of defendants Doctor's Clinical, Inc.; Nutrivita Laboratories, Inc.; Gero Vita, Inc.; and Vitastrong, Inc. Mr. Nguyen is CEO of each of the named defendants. There are no directors for any of the named defendants. Responding Party will produce the organizational chart for Robinson Pharma to supplement this answer.

(Exs. 37-41 at 2). Defendants provided an organizational chart for Defendant Robinson Pharma. However, Defendants failed to identify the owner, directors, or officers for Arthro-7, Inc., DRM Resources, and Alpha Health Research. *Id.*

Defendants' response is inadequate. First, Defendants' boilerplate objections are inappropriate, and should be rejected. *Zuniga*, 2014 WL 2599919, at *1. Second, this interrogatory seeks relevant information, as an identification of these entities' management and ownership structure is likely to lead to the discovery of admissible evidence. For example, Defendants' owners and officers are likely to be custodians of relevant documents and are potential deponents, and Defendants' ownership and management structure has implications for, *inter alia*, damages and matters of knowledge and intent. *See, e.g., Kas v. Mercedes-Benz USA, LLC*, No. CV 11-1032-GHK, 2012 WL 473931, at *2 (C.D. Cal. Feb. 1, 2012) (ordering production of ESI "sufficient to show [Defendant's] corporate structure and form of business

22

organization," requested by Plaintiff "to enable her to identify custodians and other relevant employees to be deposed"). Yet, Defendants failed to identify any current or former directors, as well as any former officers or owners. Rather, Defendants only identified their current owner and CEO, Tom Nguyen. Defendants should be ordered to provide a complete picture of their ownership and management structure.

Third, the current and former ownership and management of Arthro-7, Inc., is relevant. As discussed above, Defendant Robinson Pharma has failed to identify which entities it has sold the Accused Products to. Arthro-7, Inc. is a company purportedly formed by Tom Nguyen to sell Arthro-7, Phan Depo. Tr. 138:4-11 (Ex. 48), and the relationship between this entity and the other Defendants is relevant. *See, e.g.*, *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, No. C-10-04783, 2011 WL 1483706, at *1 (N.D. Cal. Apr. 19, 2011) (finding identities of "officers, directors, presidents and executives" for entities related to party relevant and granting motion to compel this information). Defendants' failure to provide discovery regarding this entity is plainly inappropriate and indicative of the obstructionist approach they have taken to discovery throughout this case.

Likewise, Defendants' failure to provide discovery regarding DRM Resources and Alpha Health Research is plainly inappropriate. DRM manages the day-to-day business of Defendants Doctor's Clinical, Gero Vita, Nutrivita, and Vitastrong. Phan

Depo. Tr. 24:16-23, 28:1-18 (Ex. 48). This entity maintains each of these Defendants' business records, including sales and financial records. *Id.* 30:19-31:1, 39:25-40:4, 45:21, 46:5, 51:2-12, 16-19. Alpha Health Research is DRM's parent company. *Id*. 139:16-18. Who owns these entities, and their relationship to the other Defendants is relevant and discoverable. *See, e.g.*, *Siano Mobile Silicon, Inc.*, 2011 WL 1483706, at *1.   Defendants' failure to provide this information is further example of Defendants' obstructionism. Accordingly, Imagenetix respectfully requests that the Court order Defendants to answer this interrogatory fully.

### D. Defendants' Preservation Efforts Have Been Woefully Inadequate.

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. v. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006); *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Once this duty attaches, a litigant is "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster*, 462 F. Supp. 2d at 1070 (citing *Zubulake*, 220 F.R.D. at 218); *Nat'l Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) ("The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate

those obligations to employees in possession of discoverable materials"). The affirmative duty to preserve documents requires a written preservation notice, "orally requesting certain employees to preserve relevant documents … is completely inadequate," and "borders on recklessness." *Scentsy, Inc. v. B.R. Chase, LLC*, No. 1:11-cv-249, 2012 WL 4523112, at *8 (D. Idaho Oct. 2, 2012); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012) (finding that failure to issue litigation hold notice was "not just simple negligence but rather conscious disregard of [party's] duty to preserve"); *see also Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283, 2014 WL 904595, at *4 (S.D.N.Y. Mar. 4, 2014) (finding litigation hold notice insufficient "because it was purely oral").

Defendants' preservation efforts here have been completely inadequate. First, Defendants did not issue any preservation notice until after the filing of this suit, despite the fact that they have had actual or constructive knowledge of the '676 patent since 2003, and received further notice in November 2013. *See* IMAG-00000605 (Ex. 58).

Second, Defendants' preservation notice "was inadequate in both form and in content." *Klipsch Group, Inc.*, 2014 WL 904595, at *4. Mr. Nguyen, a non-lawyer, issued an oral preservation notice to DRM. Phan Depo. Tr. 89:25-90:13 (Ex. 48). Similarly, Mr. Nguyen issued an oral preservation notice to Gero Vita's several

employees (the only of these four Defendants to have employees). *Id.* 91:2-9. Mr. Nguyen instructed DRM and the Gero Vita employees simply to "keep all documents related to the case," without further elaboration. *Id.* 91:15-25. No record exists of this communication. *Id.* 90:20-22, 91:10-11. Defendants' 30(b)(6) designee was unaware whether anyone had actually done anything to ensure that documents were actually being preserved. *Id.* 90:23-91:1, 91:12-14.

Likewise, Ms. Phan, a non-lawyer, issued an oral preservation notice to only four or five of Defendant Robinson Pharma's *500 employees*. *Id.* 94:7-14, 95:3-7, 13-16. Ms. Phan has not done anything to ensure that these four or five employees actually complied with her instructions. *Id.* 96:18-20. Moreover, Defendant Robinson Pharma has done nothing to ensure that its other 495 employees are preserving documents. *Id.* 96:21-24.

Finally, Defendants have issued no preservation notice to its fulfillment or call centers, despite the role these entities play in processing orders of the Accused Products and the fact that these entities may possess responsive documents. *Id.* 98:1-20, 98:24-99:1.

Accordingly, Defendants' counsel should be required to issue a written litigation hold notice to all of Defendants' employees, and all employees of other entities that do business on behalf of the Defendants (e.g., DRM, fulfilment centers,

26

and call centers). The notice should include detailed instructions to preserve all documents. *See HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12cv2884, 2015 WL 4714908, at *21 (S.D. Cal. Aug. 7, 2015) (Sanctioning party for failing to issue litigation hold and explaining, "[a]ttorneys have a duty to effectively communicate a 'litigation hold' that is tailored to the client … so the client will understand exactly what action to take or forebear"). Additionally, Defendants' counsel should be required to ensure that those who receive the notice actually comply with it. *See id.* ("After a litigation hold has been implemented, counsel has a continuing duty to monitor a client's compliance"). Further, Defendants should be required to produce a detailed description of their data systems, document retention policies, the steps that have been taken to preserve data, and indicate whether any relevant data has been lost or destroyed.

### E. Defendants' Representative Was Woefully Unprepared For Her Deposition, Warranting Sanctions.

Rule 30(b)(6) permits a party to take the deposition of a corporation's representative, who will "testify on its behalf." Fed. R. Civ. P. 30(b)(6). A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. *La. Pacific Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485-86 (N.D. Cal. 2012) (citing Fed. R. Civ. P. 30(b)(6)). This notice "establishes the minimum about which the

27

witness must be prepared to testify, not the maximum." *Id.* (citation omitted). "The corporation has a duty to educate its witness so they are prepared to fully answer the questions posed at the deposition." *Id*. (citation omitted). "[T]he designee must become educated and gain the requested knowledge to the extent reasonably available," including from "documents, past employees, or other sources." *Kelly v. Provident Life and Accident Ins. Co.,* No. 04cv807–AJB (BGS), 2011 WL 2448276, at *2–3 (S.D. Cal. June 20, 2011) (citation omitted); *see also Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 289 (N.D. Cal. 2015) (A "corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable, and binding answers on behalf of the corporation") (citation omitted). A designee's inability to provide knowledgeable answers about noticed matters is "tantamount to a nonappearance, and warrants sanctions" pursuant to Rule 37(d)(1)(A)(i). *Great Am. Ins. Co. of NY v. Vegas Cosnt. Co.*, 251 F.R.D. 534, 543 (D. Nev. 2008) (holding that witness's "inability to provide knowledgeable answers about the majority of the noticed deposition topics was tantamount to a nonappearance, and warrants sanctions"); *Lofton*, 308 F.R.D. at 289 ("Sanctions are available under Rule 37(d)(1)(A)(i) when the failure to produce an adequately prepared witness pursuant to Rule 30(b)(6) is tantamount to a failure to appear") (citation omitted).

Imagenetix was forced to take Defendants' deposition as a result of Defendants' grossly inadequate document production (of only 196 pages at the time the notice was issued), and demonstrably false and incomplete interrogatory answers (as discussed above). Accordingly, Imagenetix noticed a 30(b)(6) deposition to address the following topics:

1. The types and location of documents in each Defendant's possession, custody, or control responsive to Imagenetix's First Request for Production of Documents to each Defendant;

2. The types and location of documents in each Defendant's possession, custody, or control responsive to Imagenetix's Second Request for Production of Documents to Each Defendant;

3. The types and location of information in each Defendant's possession, custody, or control that could be used by each Defendant in answering Interrogatory No. 2 of Imagenetix's First Set of Interrogatories to each Defendant;

4. The searches that have been conducted by each Defendant to locate and produce to Imagenetix responsive documents in this case;

5. The efforts and actions made by each Defendant to preserve documents and other relevant information for this case;

6. The veracity and source of the [Accused Product sales] information contained in Robinson000002-Robinson000006.

Am. Notice of 30(b)(6) Deposition (Ex. 47 at 2-3).

Defendants designated Ms. Phan to testify on behalf of each of the five Defendants. Phan Depo. Tr. 11:1-9 (Ex. 48). Unfortunately, Ms. Phan did almost no preparation and was patently unprepared to address the majority of questions asked,

29

even regarding topics explicitly listed in the deposition notice. Ms. Phan did not talk to anyone from Defendants Doctor's Clinical, Gero Vita, Nutrivita, or Vitastrong to prepare for any of the noticed topics. *Id.* 17:7-17, 19:3-13. Nor did Ms. Phan speak with anyone at DRM, Defendants' call center(s), or Defendants' fulfilment center(s). *Id.* 98:21-23, 99:2-7. Nor did the witness review any material other than the deposition notice and the 196 pages that Defendants had produced in preparation for the deposition. *Id.* 15:9-13, 22-15, 16:1-2, 5-10, 17:1-6. For Topics 5 and 6, the witness testified that she did no preparation at all. *Id.* 21:10-25; 22:1-12.

Moreover, the witness was evasive and unable to answer basic questions. For example, the witness answered "Maybe" over 30 times in response to questions, and did not know the city in which several of the Defendants were located, when the Defendants were formed, whether the Defendants sold the Accused Products, or even if they had a physical location. *Id.* 22:14-15, 20-23, 35:6-9, 14-17, 20-21, 43:13-16, 45:6-7, 47:9-12, 49:23-24.

More troublesome was the witness' inability to answer specifically noticed topics. Topics 1-3 addressed the "types and location" of responsive documents kept by each Defendant. Yet the witness did not know what types of business records numerous Defendants kept, whether they kept business records at all, and where

those records were stored. *Id.* 39:25-40:22, 41:5-23, 42:13-15, 45:18-24, 46:6-11, 51:2-4.

Topic 6 concerned the "veracity and source" of sales information contained in 5 pages of documents (Robinson000002-Robinson000006) produced in response to Plaintiff's first interrogatory. Robinson000002 purportedly contains a summary of Gero Vita's sales data for Arthro-7 from 2009 through 2015. Robinson000002 (Ex. 59). DRM maintains Gero Vita's sales data and prepared the document. Phan Depo. Tr. 145:16-24 (Ex. 48). However, Ms. Phan did not speak with anyone at DRM regarding the document, did not determine how the sales data is maintained, and did nothing to ensure that the information was accurate. *Id.* 146:3-5, 11-15, 150:9-19, 23-25, 153:12-15.

Robinson000003 purportedly contains a summary of Vitastrong's sales data for Arthro-7 and Arthro-8 for 2010 through 2015. Robinson000003 (Ex. 52). DRM prepared the document, but Ms. Phan did not speak with anyone at DRM regarding it, did not determine how the sales data is maintained, and did nothing to ensure its accuracy. Phan Depo. Tr. 151:4-10, 14-18, 153:9-11 (Ex. 48).

Robinson000004 purportedly contains a summary of Nutrivita's sales data for Arthro-7 for 2009 through 2015. Robinson000004 (Ex. 60). DRM prepared the document, but Ms. Phan did not speak with anyone at DRM regarding it, did not

determine how the sales data is maintained, and did nothing to ensure its accuracy. Phan Depo. Tr. 154:6-17, 155:24-156:1 (Ex. 48).

Robinson000005 purportedly contains a summary of Doctor's Clinical sales data for Arthro-7 for 2012 through 2015. Robinson000005 (Ex. 53). DRM prepared the document, but Ms. Phan did not speak with anyone at DRM regarding it, did not determine how the sales data is maintained, and did nothing to ensure its accuracy. Phan Depo. Tr. 156:18-157:3, 158:6-8 (Ex. 48).

The deposition was only necessary because of Defendants' obstructive and evasive discovery practices described above, and Defendants' designee only continued that pattern of conduct. The designee's inability to answer even straightforward and specifically noticed topics, and nearly complete lack of preparation warrants sanctions. Courts regularly award costs and attorneys' fees where a 30(b)(6) witness is inadequately prepared and unable to answer questions on noticed topics. *See, e.g.*, *Lofton*, 308 F.R.D. at 291 (ordering party to "bear the cost of the court reporter and Plaintiff's attorneys' fees for taking two further 30(b)(6) depositions on the two topics for which its witnesses were unprepared"); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-05780, 2013 WL 4049688, at *4 (N.D. Cal. Aug. 7, 2013) (awarding costs and fees where party produced "unprepared" and "evasive" 30(b)(6) deponent); *So. Cal. Stroke Rehab. Assoc., Inc. v. Nautilus*, No. 09-

CV-744, 2010 WL 2998839, at *1-3 (S.D. Cal. July 29, 2010) (awarding costs and attorneys' fees associated with taking deposition of inadequately prepared 30(b)(6) witness, and for filing motion to compel); *Great Am. Ins. Co.*, 251 F.R.D. at 543 (awarding "reasonable costs and attorney's fee incurring in taking [the] deposition, and in filing this motion to compel and reply brief" where witness' "inability to provide knowledgeable answers about the majority of the noticed deposition topics was tantamount to a nonappearance"). The same is appropriate here. Defendants should be required to reimburse Plaintiff for the attorney time necessary to prepare for and take Defendants' deposition, as well as the cost incurred traveling to and from the deposition location. Additionally, Defendants should be required to reimburse Imagenetix for the attorney time in drafting and filing this motion. *See* Fed. R. Civ. P. 37(a)(5) ("If the motion is granted … the court must … require the party or deponent whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"); Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 26(g)(3).

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and enter the accompanying proposed order.

**DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES**

## I.   DEFENDANTS' INTRODUCTORY STATEMENT

Imagenetix, Inc. ("Plaintiff"), is assignee of U.S. patent no. 5,569,676 (the "'676 Patent"), which is a method patent that provides in Claim 1, "A method for treating osteoarthritis in mammals which comprises administering a therapeutically effective amount of cetyl myristoleate to a mammal having osteoarthritis." This is the only claim at issue in this case of patent infringement. Plaintiff also markets and sells a dietary supplement for joint relief known as Celadrin, which it claims is covered by this patent on Celadrin boxes. It is believed that Celadrin has been on the market since 2002. This product competes with the products at issue in this case, namely Arthro-7 and Arthro-8 (the "Accused Products"). Arthro-7 actually predates Celadrin, and has been on the market since 1998.

Defendant Robinson Pharma, Inc., manufactures Arthro-7 and Arthro-8, and the remaining defendants namely, Doctor's Clinical, Inc., d/b/a U.S. Doctor's Clinical; Gero Vita, Inc.; Nutrivita Laboratories, Inc.; and Vitastrong, Inc., d/b/a Gardavita (collectively "Defendants"), market and sell Arthro-7 and Arthro-8 to the public and retailers.

Defendants initially produced sale summaries in response to Plaintiff's document request/interrogatories regarding sales of Accused Products in July 2015.

Declaration of Anthony Cartee ("Cartee Decl."), ¶ 3 (Ex. 61). Plaintiff was not satisfied with such summaries (specifically, bates Robinson 000002-000006), and the parties met and conferred regarding this and other discovery issues. Plaintiff then noticed a 30(b)(6), identifying these documents as one of the subject matters to be discussed. This deposition was held on September 30, 2015.

On October 6, 2015, Defendants' counsel received a letter that prompted a telephonic conference to discuss document production issues. *Id.*, at ¶ 4. After having this conference call, Defendants' counsel confirmed by email that Defendants would supplement production. Specifically:

> Dear Dan and Mike:
>
> I've discussed your letter and our phone call.
>
> We will provide you supplemental responses and produce additional documents in two weeks, October 23rd. These responses/documents will address and comprise the sales data for the Accused Products of each Defendant as requested in your letter. If you have any questions regarding that, then we can discuss this further next week when we meet and confer on the claim construction that we were scheduled to do yesterday. As to fulfillment and call center information, I do not understand what you want or see where this is found in your

discovery requests. However, if it is claimed to be part of interrogatory no. 2, calling for names of customers, we stand by our objections and feel that such information is irrelevant to your asserted claims and is a fishing expedition to gather names to launch a series of cease and desists and suits against unsuspecting consumers. Such request invades the privacy rights of third parties, which we do not believe will be adequately protected by a protective order, as you've already indicated your desire to go after these individuals. If you have authority saying we have to turn such information over, please forward. Finally, we cannot agree to paying for your trip to California. Again, we will provide supplemental responses and documents on October 23rd.

Thank you,

Anthony

(Ex. 50). Plaintiff responded that it required more than just additional sales figures. *Id.* In response, on October 15, 2015, Plaintiff's counsel reiterated the planned supplemental production and that "[w]e do not see what or where fulfillment and call center documents are requested in your document requests. We stand behind our objections as found in our response to the interrogatories and production requests. We asked for authority regarding this privacy issue, and you instead ask us for

36

further explanation on our part. This information is simply not relevant to our sales' figures or the claims against Defendants in this lawsuit. Moreover, a demand for us to amend all discovery responses is not helpful." *Id.; Cartee Decl., ¶ 5 (Ex. 61). On October 23, 2015, Defendants served an additional 4,000-some documents as they had agreed. Since that date, no further correspondence or call on this discovery issue has been received or has taken place. Cartee Decl., ¶ 5 (Ex. 61)

On January 8, 2016, or 77 days later, Plaintiff emailed a proposed stipulation and notice of motion to compel, despite never discussing the inadequacy of Defendants' supplemental production. *Id.* Defendants do not believe that Plaintiff can satisfy its duty to attempt to resolve the discovery dispute prior to filing a motion to compel by relying on communications that took place before discovery was supplemented. *See Design Basics, Inc. v. Granite Ridge Builders, Inc.*, 2007 WL 1830809 *2 (N.D. Ind. June 21, 2007) (denying motion to compel where it was apparent that the plaintiff did not confer with defendant after defendant supplemented its discovery responses). With this in mind, the motion should be denied.

## II. DISCOVERY RESPONSES CITED BY PLAINTIFF

The following requests and interrogatories are identified by Plaintiff as requiring further production/response by each Defendant:

A.    REQUEST FOR PRODUCTION NO. 1:

All documents relating to the Accused Products, including but not limited to marketing, promotional, technical, manufacturing, and scientific materials; presentations; forecasts; budgets; financial documents; agreements; communications with the other defendants in the above captioned case, actual or potential distributors, suppliers, manufacturers, retailers, or consumers; board of directors presentations; brochures; fliers; newsletters; websites; and product labeling.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Responding Party objects to this request as being vague and ambiguous as to time, overbroad in scope and compound. Responding Party further objects to this request in that it is irrelevant to the claims asserted in this action, namely patent infringement.  Subject to and without waiving such objections, and to the extent that Responding Party understands this request, Responding Party will comply and provide responsive documents in its possession and control.

*Defendants' Objections to Request No. 1 Are Proper, and This Request Needs to Be Narrowed*

As to this Request, there is nothing improper about Defendants' objections. This is an "everything-under-the-sun" request by Plaintiff, limitless in time and in scope. If read to its logical limits, Defendants would have to produce every piece of paper that

somewhat even remotely "relates" to a product that has been on the market for nearly 20 years. Most of that would be irrelevant and un-proportional to the needs of this case. Fed. R. Civ. P., Rule 26(b)(1). During the 2015 meet and confer process, Plaintiff focused upon sales data, sales figures, and that is what Defendants supplemented their production with. Cartee Decl., ¶¶ 4 – 5 (Ex. 61). In addition, Defendants had already provided marketing and promotional materials, including flyers, brochures, newsletters, and product labeling.

Despite this, Plaintiff continues to push for "all transactional data related to the Accused Products" … "without limit by date …." *See supra*, IIA, pg. 8. Given that Plaintiff is limited to a six-year recovery under U.S. Patent Law and that patent infringement is Plaintiff's sole cause of action, it is neither relevant nor proportional to the needs to this case for it to seek sales data "without limit."

"No recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. §286. Therefore, any recovery by Plaintiff will be limited to the six years preceding its filing of this suit, and any data before 2009 is not relevant. Defendants provided documents from each Defendant within this time period showing sales of the Accused Products. That should be sufficient.

It is well established that "requested information is not relevant to 'subject

matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." *Micro Motion, Inc.*, 894 F.2d at 1327; *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) ("[A] party may not undertake wholly exploratory operations in the vague hope that something helpful will turn up."). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim … That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Micro Motion, Inc.*, 894 F.2d at 1327 (emphasis in original).

Moreover, where discovery seeks disclosure between competitors, courts will generally use their discretion to avoid unnecessary disclosure of harmful information, such as trade secrets and other material. *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 330-31 (9th Cir. 1961); *United States v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir. 1969).

In this instance, Plaintiff's request for production must be narrowed and limited in scope and time. In its October 6, 2015, letter, Plaintiff mentions nothing of the bulk of categories in Request No. 1. It focuses instead on sales data and customer information. (Ex. 49). Defendants are willing to provide other categories of information, but within a time and scope limitation. Plaintiff has consistently refused

to narrow its request, so Defendants believe accordingly, they must stand by their objections.

B.    INTERROGATORY NO. 1:

Provide the annual units sold, revenues, and costs for each of the Accused Products; for 2015, provide year-to-date.

RESPONSE TO INTERROGATORY NO. 2:

Responding Party objects to this interrogatory in that it is overbroad as to time and scope. Subject to and without waiving such objection, Responding Party responds that it will provide documents sufficient to show the annual units sold, revenues, and costs for each of the Accused Products for the last six years.

*Defendants Have Provided These Figures in Their Supplemental Production of October 23, 2015*

Like the request for production, this interrogatory is overbroad and limitless in scope. In its supplemental production, Defendants provided the annual units sold of each Accused Product by the Defendants that sell Arthro-7 and Arthro-8 for the previous six-year period. That production showed the date of sale, the company making the sale, the product, the order number, the amount of bottles (units), and the dollar amount. Previously, the manufacturer of the Accused Products, Robinson Pharma, produced the total costs per bottle of Arthro-7.

While Defendants understand that their sales are relevant to this case, Defendants believe they have complied and provided this through documentation. It seems that Plaintiff's main contention/response is that Defendants advertise 8 million bottles of Arthro-7 being sold over that product's history. As to this, Plaintiff simply does not acknowledge or take into account that Arthro-7 predates the incorporation of many of the Defendants. Arthro-7 has been on the market since 1998. Defendant Doctor's Clinical, Inc., was incorporated on October 24, 2011; Gero Vita, Inc., was incorporated on July 10, 2006; Nutrivita Laboratories, Inc., was incorporated on February 27, 2009; and VitaStrong, Inc., was incorporated on May 24, 2010. Plaintiff brought this action for direct patent infringement and indirect patent infringement. The damages for each cause of action is limited by 35 U.S.C. § 286 to six years. Defendants have provided these figures, and Defendants do not know how else it can supplement such response absent writing down what it has already produced.

C.     INTERROGATORY NO. 2:

Identify the persons or organizations that purchased the Accused Products and, with respect to each Accused Product, provide the annual amount in units and dollars for each person or organization; for 2015, provide year-to-date.

RESPONSE TO INTERROGATORY NO. 3:

Responding Party objects to this interrogatory as being vague, ambiguous, and overbroad as to time and scope. Responding Party further objects to this interrogatory in that it seeks information not relevant to the subject matter of this litigation, specifically the names of Responding Party's customers, and could require the disclosure of a protected trade secret or other confidential information of Responding Party, which it does not feel necessary to divulge to a competitor. Further, if Responding Party has sold to any individual consumer, disclosure would violate the privacy rights of such third parties. The information sought in this interrogatory, namely, the annual amount of Arthro-7 and Arthro-8 sold in units and dollars would be provided by the documents produced in response to interrogatory number 1.

### Interrogatory No. 2 Seeks Proprietary Information Entirely Irrelevant to this Action, and Defendants' Objections Are Proper

There is no reason for Plaintiff to have individual consumer names and addresses whom Defendants have sold the Accused Products to. In discussing this issue, Plaintiff made clear that it did not need such information for its own claims against Defendants, but rather so that Plaintiff (or their counsel) can go after these alleged direct infringers. Given that Plaintiff and the marketing Defendants are competitors in the joint-relief supplement field, such information is proprietary, and

Defendants should not have to provide such broad, unnecessary information to Plaintiff. Even with a protective order in place, the release of such information can be harmful to Defendants and to the third parties whose names are released to Plaintiffs. *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Relevancy for the purposes of Rule 26 is broadly construed … However, the potential for discovery abuse is ever-present, and courts are authorized to limit discovery to that which is proper and warranted in the circumstances of the case.") (citation omitted).

Moreover, such a list of customers is proprietary.   A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Imax Corp. v. Cinema Techs, Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998).  If a demonstration of harm is established, the burden shifts to the party seeking discovery to establish that disclosure of the trade secret is relevant and necessary to the action, but the court must balance "the need for the trade secrets against the claim of injury resulting from disclosure." *Heat & Control, Inc. v. Hester Inds., Inc.*, 785 F.2d 1017, 1025 (Fed.

Cir. 1986). The harm to Defendants could be substantial if Plaintiff follows through and pursues each individual as direct infringers, and such information is entirely unnecessary to prove any element of Plaintiff's case, especially when Plaintiff already knows and has sent subpoenas to Defendants' retailers, Walgreens, Rite Aid, and CVS, and has been provided sales data from Defendants. Defendants' objections, including its objection of relevancy, should be sustained, and Defendants should not have to provide such information to Plaintiff.

### D.    INTERROGATORY NO. 3 (To Robinson Pharma Only):

Identify the persons or organizations that received the Accused Products and, with respect to each Accused Product, provide the annual amount in units and dollars that each person or organization received; for 2015, provide year-to-date.

RESPONSE TO INTERROGATORY NO. 3 (To Robinson Pharma Only):

Responding Party objects to this interrogatory as being vague, ambiguous, and overbroad as to time and scope. Responding Party further objects to this interrogatory in that it seeks information not relevant to the subject matter of this litigation, and the information sought in this interrogatory, namely, the annual amount of Arthro-7 and Arthro-8 sold in units and dollars would be provided by the documents produced in response to interrogatory number 1. Subject to and without waiving such objections, and to the extent that Responding Party understands this

interrogatory, Responding Party responds that it will provide documents sufficient to show that it manufactured the product for the other entities to this action, namely, Doctor's Clinical, Inc.; Nutrivita Laboratories, Inc.; Gero Vita, Inc.; and Vitastrong, Inc.

### *Interrogatory No. 3 Was Not Discussed by Counsel During Their Meet and Confer Efforts*

Defendants read this interrogatory the same as it reads Interrogatory 2 above. For the same reasons, there is no reason for Plaintiff to have individual consumer names and addresses. Also, like all discovery, it is limitless in time and scope. Moreover, there is nothing in the letter of October 6, 2015, following up on this interrogatory nor were their discussions on this interrogatory following that letter. During the 30(b)(6) deposition, the CFO for Robinson Pharma confirmed that Robinson made the Arthro-7 product for Defendants. Nevertheless, if Plaintiff counsel wishes a supplemental response to this interrogatory, Defendants are willing to provide one and to provide a supplemental production of the amounts of Accused Products provided to the other Defendants within the last six years.

E.    (Second Set to all Defendants) INTERROGATORY NO. 1:

Separated by year and entity, identify all current and former directors, officers (including title), and owners (including their share of ownership) for each of the

following entities: all defendants in the above-captioned case, Anthro-7, Inc., DRM Resources, and Alpha Health Research.

(Second Set to all Defendants) RESPONSE TO INTERROGATORY NO. 4:

Responding Party objects to this interrogatory as being overly broad, compound, and vague and ambiguous. Responding Party further objects to this interrogatory in that such information is irrelevant to the subject matter of this lawsuit, namely patent infringement, and is further not calculated to lead to the discovery of admissible evidence. Subject to and without waiving such objections, and to the extent that Responding Party understands this interrogatory, Responding Party responds that Tom Nguyen is 100% owner of defendants Doctor's Clinical, Inc.; Nutrivita Laboratories, Inc.; Gero Vita, Inc.; and Vitastrong, Inc. Mr. Nguyen is CEO of each of the named defendants. There are no directors for any of the named defendants. Responding Party will produce the organizational chart for Robinson Pharma to supplement this answer.

*Defendants' Objections Are Proper, and the Information is Irrelevant to the Issue of Patent Infringement*

In *Siano Mobile Silicon, Inc. v. Mavcom, Inc.,* 2011 WL 1483706, at *1 (N.D. Cal. April 19, 2011), the court found information on officers, directors, and executives to be relevant for jurisdictional discovery. That case involved a motion to

dismiss for lack of personal jurisdiction, where jurisdictional discovery was allowed to establish minimum contacts within the district, and also to support alter ego and agency claims. There are no such issues present in this case that would make additional response to this interrogatory appropriate.

Plaintiff claims that the response is incomplete given that "identification of owners' and officers are likely to be custodians of relevant documents and are potential deponents." *See supra*, part C(iv), pg. 22. Plaintiff further notes that Arthro-7, Inc., was a company formed by Tom Nguyen to sell Arthro-7. *Supra,* C(iv), pg. 23. However, Plaintiff also knows this company was dissolved. The other companies mentioned in this interrogatory are non-defendant third parties. It is not appropriate for Defendants to provide such information given the parameters of the allegations of patent infringement, and Defendants have sufficiently responded to this interrogatory as to the named Defendants.

## III.    DEFENDANTS' CONCLUSION

Defendants have every right to stand by their objections to the overly broad and unlimited in time and scope discovery requests submitted by Plaintiff. Plaintiff has not been willing to narrow or fine tune any of its requests/interrogatories. While the Federal Rules of Civil Procedure allows broad discovery, the right is not absolute and unlimited.  *Micro Motion, Inc.,* 894 F.2d at 1322 (Fed. Cir. 1990).  Even if

relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information. *Id.* at 1323. The party seeking discovery has the burden to demonstrate that the information sought is relevant and necessary. *Katz*, 984 F.2d at 424-25. Here, the elements of patent infringement are finite and straightforward. 35 U.S.C. § 271. Recovery of damages is limited to six years prior to the lawsuit being filed. 35 U.S.C. § 286. As such, Defendants have complied by providing such sales data and other information. There is simply no reason for Plaintiff to have Defendants' consumer data other than to launch additional claims against these individuals with their now-expired patent. Such consumer information is not relevant nor is it "proportional to the needs of the case." Fed. R. Civ. P., Rule 26(b)(1). Plaintiff's search for officer, director information for non-defendant third parties is also unnecessary. Plaintiff has alleged that Defendants have common ownership and officers in its complaint, and Defendants have confirmed such through response to their interrogatory.

As to claims that Defendants need to explain their search methodology and how searches were done, Defendants note that such explanations are usually accompanied in cases where privileges are asserted or in matters where a party asserts it does not have responsive documents. *See A. Farber & Partners, Inc. v.*

*Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006); *Rogers v. Guirbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012). Defendants did not respond that they would not comply with the discovery request. Defendants produced documents, supplemented that production, but maintain that their objections are well-founded and that Plaintiff's request must be narrowed before any further production is required. Plaintiff also complains about holding a 30(b)(6) deposition with an unprepared witness. However, as Defendants' counsel Daniel Do-Khanh noted on record that the deposition itself went "way, way beyond the 30(b)(6) Notice." (Ex. 48). Furthermore, counsel for the parties agreed to keep the deposition open so that it may be continued at a future time. *Id.*

Finally, after October 23, 2015, Plaintiff did not revisit any of these discovery issues with Defendants until January 8, 2016 when it sent is portion of the Joint Stipulation. Defendants believe that they have worked with Plaintiff's counsel and continue to be willing to do so. Defendants are still willing to provide documents and, if necessary, supplemental responses within more narrowly-defined parameters. However, Defendants do not believe its customer names and addresses would further this case in any productive way. As such, Defendants request that Plaintiff's Motion be denied.

Respectfully submitted,

Dated:  March 28, 2016          **KOTCHEN & LOW LLP**

                                By: /s/Daniel Kotchen_____
                                    Daniel Kotchen
                                    Michael von Klemperer

                                Attorneys for IMAGENETIX, INC.

Dated:  March 28, 2016          **NG DO KHANH, PC**

                                By: /s/Anthony Cartee_____
                                    Daniel Do-Khanh
                                    Anthony Cartee

                                Attorneys for ROBINSON PHARMA, INC.;
                                DOCTOR'S CLINICAL, INC.; GERO
                                VITA, INC.; NUTRIVITA
                                LABORATORIES, INC.; VITASTRONG,
                                INC.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE

The foregoing document, and several supporting exhibits, were filed under seal pursuant to the Court's March 24, 2016 Order (Dkt. #51). Pursuant to Local Rule 79.5-3, I certify that this motion and all accompanying material was served on counsel of record for all parties by email on the same day that it was filed.

By: /s/Daniel Kotchen
Daniel Kotchen